IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.D.,                                    :
                    Petitioner          :
                                         :
        v.                               :    No. 37 M.D. 2020
                                         :    Submitted: October 23, 2020
Robert Evanchick,                        :
                    Respondent           :

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                    FILED:  August 10, 2021

        Before us, in our original jurisdiction, are the preliminary objections in
the nature of a demurrer filed on behalf of Robert Evanchick, Commissioner
(Commissioner) of the Pennsylvania State Police (PSP), to D.D.'s petition for review
(Petition) challenging the sex offender registration scheme under the Sexual Offender
Registration and Notification Act (SORNA),[1] as amended by the Act of June 12, 2018,
P.L. 140 (collectively, Act 29).  D.D., who is currently represented by counsel, alleges
several as-applied constitutional challenges to Act 29 on due process, *ex post facto*,
and equal protection grounds.  He also asserts the registration requirements violate his
right to reputation under the Pennsylvania Constitution.  Upon review, we sustain the
preliminary objections in part, overrule them in part, and direct Commissioner to
answer.

_____
[1] Act of December 20, 2011, P.L. 446, *as amended*, 42 Pa. C.S. §§9799.10-9799.41.

## I. Background

D.D. committed rape in 1989, before the enactment of any sex offender registration laws in Pennsylvania.[2] He was convicted on August 2, 1990, by the sentencing court. His Petition seeks mandamus relief from the enforcement of any sex offender registration laws premised on violations of the due process and equal protection clauses of the federal and state constitutions. He asserts that enforcement of the statutory scheme is an impermissible *ex post facto* law, emphasizing that his underlying offense was committed over 30 years ago. Pet., ¶6. D.D. also argues that as applied, Act 29 violates the separation of powers doctrine in that the registration obligation has the effect of increasing his sentence by imposing additional restrictions. In addition, D.D. challenges the automatic presumption that he is a sexually violent predator (SVP), which he avers is "fatal to his reputation." Pet., ¶36.

Commissioner filed preliminary objections in the nature of a demurrer to his Petition, asserting D.D. could not state a legally cognizable claim on any of the constitutional theories. Commissioner then filed an application for a stay pending disposition of *Commonwealth v. Lacombe*, 234 A.3d 602 (Pa. 2020), and *T.S. v. Pennsylvania State Police*, 231 A.3d 103 (Pa. Cmwlth.), *rev'd*, 241 A.3d 1091 (Pa. 2020), which this Court denied. Since then, our Supreme Court issued decisions in both cases, holding Act 29 is non-punitive in *Lacombe*, and reversing our decision in *T.S.*, which aids our disposition. After briefing, we decide the matter.

---

[2] The first sex offender registration law in Pennsylvania, referred to as Megan's Law I, the Act of October 24, 1995, P.L. 1079 (Spec. Sess. No. 1), was enacted in 1995, and became effective in early 1996. Megan's Law II, the Act of May 10, 2000, P.L. 74, was enacted on May 10, 2000, in response to Megan's Law I being ruled unconstitutional by our Supreme Court in *Commonwealth v. Williams*, 733 A.2d 593 (Pa. 1999). Then, the Court held some portions of Megan's Law II unconstitutional (penalties for failure to register) in *Commonwealth v. Williams*, 832 A.2d 962 (Pa. 2003), and the General Assembly responded by enacting Megan's Law III, the Act of November 24, 2004, P.L. 1243. *Dougherty v. Pa. State Police*, 138 A.3d 152, 155 n.8 (Pa. Cmwlth. 2016). In order to comply with the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§16901-16945, SORNA (Megan's Law IV), was passed on December 20, 2011.

## II. Issue

The issue before the Court is whether D.D. states a cognizable claim for mandamus relief asserting the application of sex offender statutes are unconstitutional as applied to him when he was sentenced prior to enactment of the statutory scheme. He argues that *Commonwealth v. Lippincott*, 208 A.3d 143 (Pa. Super. 2019), a decision by our sister appellate court, supports his mandamus claim.

## III. Discussion

We consider Commissioner's demurrer to each of the constitutional claims set forth in D.D.'s Petition. D.D. seeks to preclude PSP's enforcement of sexual offender registration laws against him. D.D. argues he is not subject to Act 29 because his crime and conviction both predate the enactment of the sexual offender registration scheme in Pennsylvania.

D.D. claims the application of Act 29 to him violates the *ex post facto* clauses,[3] due process clauses,[4] and equal protection clauses[5] of the federal and state constitutions. Specifically, he alleged it violated the equal protection clause in Article I, section 26 of the Pennsylvania Constitution. *See* Pet., ¶23. He asserts retroactive application of Act 29 also violates the separation of powers doctrine in that it increases his sentence obligations.

## A. Demurrer

In reviewing preliminary objections, we must accept as true all well-pled allegations of material facts, as well as all inferences reasonably deducible from those facts. *Key v. Pa. Dep't of Corr.*, 185 A.3d 421, 423 n.3 (Pa. Cmwlth. 2018).

---

[3] U.S. CONST. art. I, §10; PA. CONST. art. I, §17.

[4] U.S. CONST. amends. V, XIV; PA. CONST. art. I, §1.

[5] U.S. CONST. amend. XIV; PA. CONST. art. I, §26.

However, this Court is not required to accept as true any unwarranted factual inferences, conclusions of law, or expressions of opinion. *Id.* Moreover, we are not bound by allegations in the pleading that are inconsistent with any documents properly appended to the pleading. *Allen v. Pa. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). Only where the pleading is "facially devoid of merit," should the demurrer be sustained. *Wurth by Wurth v. City of Phila.*, 584 A.2d 403, 406 (Pa. Cmwlth. 1990) (*en banc*) (citation omitted). Further, any doubt as to whether the law will permit recovery must be resolved in favor of the non-moving party. *Key.*

A mandamus claim is an extraordinary form of relief to enforce clear legal rights. *Detar v. Beard*, 898 A.2d 26, 29 (Pa. Cmwlth. 2006). The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure. *Id.* This Court may only issue a writ of mandamus where the petitioner possesses a clear legal right to enforce performance of a ministerial act or mandatory duty, the respondent possesses a corresponding duty to perform the act, and the petitioner possesses no other adequate or appropriate remedy. *Id.*

Primarily, Commissioner argues that regardless of whether there was a sex offender statute in effect at the time he committed his crimes, D.D. is now subject to its provisions. It contends that prior versions of the sex offender statute applied to D.D., notwithstanding the dates of application to offenses committed between April 22, 1996, and the effective date in SORNA, "which, concededly, would not include [D.D.]." Commissioner's Reply Br. at 1. It also maintains that regardless of whether the state registration law were applied to him, D.D. is required to register pursuant to federal law,[6] rendering his claims effectively, if not legally, moot.

---

[6] *See* 34 U.S.C. §20913 ("sex offender shall register . . . in each jurisdiction where the offender resides . . . "). We decline to entertain this argument as it essentially seeks "an advisory opinion." *W.W. v. Pa. State Police* (Pa. Cmwlth., No. 239 M.D. 2020, filed Jan. 15, 2021), 2021 WL 140807, at *6.

**B. Constitutional Claims**

**1. *Ex Post Facto* Clause**

First, we address whether D.D. may state a claim for violation of the *ex post facto* clauses of the state and federal constitutions. He alleges the statutory scheme is an *ex post facto* law as applied to him because he committed his crimes in the late 1980s, before enactment of the sex offender registration scheme.

Specifically, D.D. claims the retroactive application of Act 29 to him is unconstitutional under *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017), *cert. denied*, 138 S. Ct. 925 (2018). However, this argument was soundly rejected by our highest court in *Lacombe*. In *Lacombe*, the Court held that Act 29 (Subchapter I, 42 Pa. C.S. §§9799.51-9799.76) does not have a punitive effect, and, therefore, does not violate the *ex post facto* clause.

D.D. argues that *Lacombe* is distinguishable on its facts because the crimes at issue fell within the relevant timeframe for application of Subchapter I, whereas his crimes predate enactment of the statutory scheme and so fall outside of Subchapter I. Notwithstanding that Subchapter I applies to sex offenders whose crimes occurred between April 22, 1996, and December 22, 2012, and D.D.'s crimes occurred in 1989, he fails to state a violation of the *ex post facto* clause under current precedent.

In 2020, this Court issued a series of decisions, premised on our *en banc* decision in *T.S.*, that Act 29 constituted an improper *ex post facto* law for petitioners who committed their crimes before April 22, 1996. *See L.S. v. Pa. State Police* (Pa. Cmwlth., No. 391 M.D. 2019, filed Dec. 3, 2020), 2020 WL 7067368 (unreported), *rev'd & remanded*, (Pa., No. 70 MAP 2020, filed July 21, 2021); *J.R. v. Pa. State Police* (Pa. Cmwlth., No. 127 M.D. 2019, filed Nov. 10, 2020), 2020 WL 6572805 (unreported); *B.W. v. Pa. State Police* (Pa. Cmwlth., No. 433 M.D. 2018, filed July

5

6, 2020), 2020 WL 3639559 (unreported) (*en banc*), *rev'd & remanded*, (Pa., Nos. 44, 47 MAP 2021, filed June 22, 2021). We were persuaded by the argument that *Lacombe* did not apply because the date of the crimes was dispositive to preclude application of Act 29. However, by per curiam order dated December 22, 2020, the Supreme Court reversed our decision in *T.S.*, citing its decision in *Lacombe*, effectively overruling that line of cases. *See T.S. v. Pa. State Police* (Pa., No. 34 MAP 2020, filed Dec. 20, 2020). More recently, in *B.W.*, the Court reversed and remanded this Court's decision on the same grounds, *i.e.*, that Subchapter I of Act 29 does not constitute criminal punishment and is not an *ex post facto* law, even as to offenders who committed their triggering offenses before *any* sex offender registration scheme existed. This includes D.D. As such, there is no legal basis for his *ex post facto* claim, and we sustain Commissioner's demurrer and dismiss this claim.

## 2. Separation of Powers Violation

As to his separation of powers claim, D.D. alleges that "legislative action [imposition of Act 29 to him] would encroach on the sovereign power of the judiciary," Pet., ¶ 29, because it would increase his punishment and sentence, which is a function of the sentencing court. Pet., ¶¶25-26. He argues Act 29 thus violates the separation of powers between the judiciary and the legislature.

However, D.D.'s contentions depend upon the punitive effect of the statute such that Act 29 constitutes a legislative alteration of his sentence without consideration by the sentencing court. Because our highest court determined there is no such punitive effect, D.D.'s Petition is likewise unavailing on this claim.

Last year, in *Commonwealth v. Torsilieri*, 232 A.3d 567 (Pa. 2020), our Supreme Court addressed this identical issue, determining that there was no

separation of powers violation in enacting Act 29. As such, this claim may also be dismissed as a matter of law, and we sustain Commissioner's demurrer.

### 3. Due Process Challenges

Next, we consider whether the Petition states a viable due process claim under either the federal or the state constitutions. The due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution provide, respectively, that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law," "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amends. V, XIV, respectively. At the state level, the due process clause in article I, section 1 of the Pennsylvania Constitution protects the right to reputation. It provides: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." PA. CONST. art. I, §1.

D.D. asserts both procedural and substantive due process violations when Act 29 is applied to him. As to procedure, he alleges the statute contains an impermissible, irrebuttable presumption that he will reoffend. Pet., ¶18. As to substance, D.D. contends Act 29 violates his right to reputation through the registration requirements. Pet., ¶36.

### a. Irrebuttable Presumption Doctrine

D.D. challenges Act 29's improper use of an irrebuttable presumption that he is a SVP, Pet., ¶18, incapable of rehabilitation without any mechanism for proving otherwise. *See* Pet., ¶36 ("the Act erroneously classifies him as an SVP"). He bases this allegation in part on the belief "[t]hat presumption caused Megan's Law

7

I to be ruled unconstitutional in [*Muniz*]." Pet., ¶19. Based on these allegations, we consider whether the Petition states a procedural due process claim.

The irrebuttable presumption doctrine stems from federal case law "involving statutes that infringed upon protected interests or denied benefits by utilizing presumptions that the existence of one fact was statutorily conclusive of the truth of another fact." *R.C. v. Evanchick* (Pa. Cmwlth., No. 223 M.D. 2019, filed Mar. 17, 2021), slip op. at 11-12, 2021 WL 1017421, at *6 (unreported)[7] (quoting *In re J.B.*, 107 A.3d 1, 14 (Pa. 2014)). Recently, in our unreported decision in *R.C.*, we recognized: "The first step in any due process analysis under the irrebuttable presumption doctrine is to determine whether an interest that is protected by due process is involved at all." *Id.*, slip op. at 7, 2021 WL 1017421, at *4 (citing *Am. Mfrs. Mut Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). "The second step in the analysis is to determine 'whether the presumption is not universally true,'" and, finally, whether reasonable, alternative means exist for ascertaining the presumed fact. *Id.* at 20, 2021 WL 1017421, at *10 (citing *In re J.B.*, 107 A.3d at 16).

This Court reasoned that the first element was met in that the alleged interest, *i.e.*, the right to reputation, was a right protected by due process. *R.C.*, slip op. at 19, 2021 WL 1017421, at *12 (citing *Taylor v. Pa. State Police*, 132 A.3d 590, 607 (Pa. Cmwlth. 2016)). Therefore, the state may not abridge that right to reputation without due process of law.

In *In re J.B.*, our Supreme Court determined that SORNA, as applied to juvenile sex offenders, violated due process rights through the use of an irrebuttable presumption that sex offenders would reoffend. Thus, the harm to

---

[7] Though it is not binding, we cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

reputation based on the classification of sex offenders as recidivists is recognized as to juvenile offenders.

Before this Court, the petitioner claimed the same in *W.W. v. Pennsylvania State Police* (Pa. Cmwlth., No. 239 M.D. 2020, filed Jan. 15, 2021), 2021 WL 140807 (unreported), when seeking mandamus relief. We reasoned the right to reputation for adult offenders, as distinguished from the juveniles in *J.B.*, was not implicated, stating:

> Similarly, Subchapter I [of SORNA] does not signal the dangerousness of any particular offender. It merely provides that adult sex offenders, as a group, have a high risk of recidivism. A hearing on his individual dangerousness or likelihood to reoffend is irrelevant to the universal truth of the group as a whole. Therefore, the irrebuttable presumption doctrine does not apply.

*Id.*, slip op. at 7, 9, 2021 WL 140807, at *4.

In *Torsilieri*, with respect to the second element, our Supreme Court determined that in pleading a due process claim based on an irrebuttable presumption, a petitioner must aver either a consensus of scientific evidence rebutting the presumption as to the class of adult sex offenders that they are at high risk of reoffending, or the clearest proof to rebut the legislative findings that Act 29 is non-punitive. The Court recognized that while the legislative findings regarding adult offenders are entitled to some deference, we "will not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights." *Id.* at 583.

Applying these cases to the instant matter, D.D.'s Petition does not aver sufficient facts to establish a claim. Nor does his counseled brief discuss the irrebuttable presumption doctrine, or allude to any evidence or scientific authority to rebut the presumption of reoffending. Unlike the petitioner in *R.C.*, D.D. does not

9

challenge the scientific consensus or universality regarding the presumption in his pleadings.

This case is more analogous to *W.W.*, in which the petitioner, like D.D., sought mandamus, which requires a clear right to relief from Act 29's application. In *R.C.*, we recognized the pleadings in *W.W.* were insufficient to withstand a demurrer because they did not contain averments of universality or facts indicating whether reasonable alternative means exist for ascertaining the presumed fact. Indeed, it is unclear what process D.D. seeks as a means of rebutting the presumption as applied to him. Reading the *pro se* Petition generously in his favor, D.D. alleges a constitutional violation based on the commission of his crimes over 30 years ago. We do not infer facts regarding his individual likelihood of reoffending from the mere passage of time. Although reputation is a fundamental right in Pennsylvania, Act 29 does not make a determination as to D.D.'s individual likelihood to reoffend, but to *sex* offenders as a class, and so does not implicate the irrebuttable presumption doctrine so as to warrant a clear right to relief.

### b. Substantive Due Process - Fundamental Right to Reputation

D.D. also claims a violation to his fundamental right to reputation through the requirements of Act 29, including registration. Commissioner construes this as a challenge to D.D.'s name being placed on the registry. *See* Prelim. Obj., ¶27.

In Pennsylvania, the right to reputation is fundamental and "cannot be abridged without compliance with state constitutional standards of due process." *Taylor*, 132 A.3d at 605. Generally, the fundamental right to reputation implicates strict scrutiny. *Id.* However, Commissioner contends that because the right to

10

reputation involves the regulation of sexual offenders, this Court should apply a lesser level of scrutiny. However, under current case law, that is unclear.

As we held in *R.C.*, it still remains undecided whether "Act 29's dissemination of a registrant's information on the internet violates substantive due process." *Id.*, slip op. at 26, 2021 WL 1017421, at *12. Because the law as to this issue remains unsettled to date, the prerequisites for a demurrer are not present. We may only grant a demurrer where it is clear and free from doubt that a petitioner may not prevail on any legal theory averred. Here, D.D. claimed a right to protect his right to reputation. *See* Pet., at 1 and ¶36, alleging damage to his reputation under Act 29's application to him, and classification of him as a sexually violent predator. In light of our recent decision in *R.C.*, we are unable to conclude that D.D. will be unable to demonstrate the dissemination of information on the internet violates his right to reputation. Accordingly, we overrule the demurrer to the substantive due process claim to D.D.'s right to reputation, and Commissioner is required to answer that claim.

### 4. Equal Protection Claim

Lastly, we consider D.D.'s constitutional challenge on equal protection grounds. *See* Pet., ¶¶24, 28. Commissioner argues D.D. cannot state an equal protection claim because sex offenders are not a suspect class. We agree.

Equal protection is the constitutional principle that 'like persons in like circumstances will be treated similarly'" under the law. *Doe v. Miller*, 886 A.2d 310, 315 (Pa. Cmwlth. 2005) (quoting *Curtis v. Kline*, 666 A.2d 265, 267 (Pa. 1995)). The Equal Protection Clause of the Fourteenth Amendment to the federal Constitution provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. The source of equal

11

protection under state law that D.D. cites is article I, section 26 of the Pennsylvania Constitution, which states: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, §26.

However, the level of protection depends on whether the person asserting the claim belongs to a suspect class.[8] Certain legislative classifications are reasonable bearing a rational relationship to the purpose of the legislation.

Generally, "economic and social legislation, including legislation creating classifications or categories among criminal offenders, receives rational basis review." *Jackson v. Com.*, 143 A.3d 468, 474 (Pa. Cmwlth. 2016). In assessing whether a rational basis for the law exists, we "first determine whether the challenged statute seeks to promote a legitimate state interest or public value." *Id.* (citation omitted). Then, we examine whether the legislative classification "is reasonably related to accomplishing that articulated state interest or interests.'" *Id.* at 475 (quoting *Miller*, 886 A.2d at 316).

In *Miller*, we held convicted sex offenders were not a protected class. Moreover, this Court has previously held that Act 29 is rationally related to the legitimate interest of protecting public safety and welfare. *See Huyett v. Pa. State Police* (Pa. Cmwlth., No. 516 M.D. 2015, filed Aug. 17, 2017), 2017 WL 3526710 (unreported).

---

[8] In *Doe v. Miller*, 886 A.2d 310, 315 (Pa. Cmwlth. 2005), we noted:

These classifications are: (1) classifications which implicate a 'suspect' class or a fundamental right; (2) classifications implicating an 'important' though not fundamental right or a 'sensitive' classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a 'compelling' governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an 'important' governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

12

Here, D.D. does not claim he is being treated differently from others convicted of rape. In fact, careful review of the Petition reveals that D.D. states, at best, a legal conclusion that Act 29 violates the equal protection clause in the Pennsylvania Constitution, quoting that law. *See* Pet., ¶23 n.5. As D.D. does not allege any facts regarding the treatment of others similarly situated, and this Court has held there is a rational basis for the classification of convicted sex offenders, we agree with Commissioner that D.D. fails to state an equal protection claim.

## IV. Conclusion

Because D.D. cannot establish the *ex post facto*, equal protection and separation of powers claims, under recent precedent, we sustain the demurrer to these claims, and dismiss those claims with prejudice. We further sustain the demurrer based on the alleged procedural due process claim predicated on the irrebuttable presumption doctrine. However, the demurrer is overruled as to the constitutional challenge premised on the fundamental right to reputation founded in our state Constitution, and Commissioner is therefore directed to respond to that claim within thirty (30) days.

_____
J. ANDREW CROMPTON, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

D.D.,         :
     Petitioner   :
          :
  v.         :   No. 37 M.D. 2020
          :
Robert Evanchick,     :
     Respondent   :

## **O R D E R**

  **AND NOW**, this 10th day of August 2021, the preliminary objections in the nature of a demurrer filed by the Attorney General's office on behalf of Robert Evanchick (Commissioner) are SUSTAINED as to the constitutional claims raised under the separation of powers doctrine, the equal protection, procedural due process, and *ex post facto* clauses, and D.D.'s petition for review is DISMISSED with prejudice as to those claims. However, the demurrer is overruled as to the substantive due process challenge founded in the right to reputation protected under the Pennsylvania Constitution, article I, section 1, PA. CONST. art. I, §1, in accordance with the foregoing opinion. Accordingly, Commissioner is directed to respond to the factual allegations contained in paragraphs ¶¶1-13, 16, 27-28, ¶¶33, 34 (due process only), 36, and 38 of the petition for review within thirty (30) days.

            _____
            J. ANDREW CROMPTON, Judge