Harry D. **FLOHR** and Sharon G. Flohr, in their own right and as guardians of Erin E. Flohr, Jennifer Flohr and Douglas Flohr and Harry Flohr, Administrator of the Estate of Dana Marie Flohr, Plaintiffs,

v.

**PENNSYLVANIA POWER & LIGHT COMPANY**, Otter Creek Recreational Campground, Otter Creek Enterprises, Inc., Allen Entrekin and Fern Entrekin, Defendants.

Civ. A. No. 91–4216.

United States District Court,
E.D. Pennsylvania.

March 19, 1992.

Dwight L. Koerber, Jr., Kriner Koerber & Kirk, Clearfield, Pa., John T. Siegler, Sims, Walker & Steinfeld, P.C., Washington, D.C., for plaintiff.

Charles C. Thebaud, Jr., Paul H. Lamboley, Washington, D.C., for defendant.

## MEMORANDUM & ORDER

HUYETT, District Judge.

This action arises as a result of an accident which killed Dana Marie Flohr on July 3, 1989 when she and her family were fishing at Otter Creek Recreational Area. Defendants Pennsylvania Power And Light Company, Otter Creek Recreational Campground, and Otter Creek Enterprises, Inc. move to dismiss plaintiffs' complaint pursuant to Fed.R.Civ.P. 12(b)(6).[1] Plaintiffs, Harry D. Flohr and Sharon G. Flohr, in their own right and as guardians of Erin E. Flohr, Jennifer Flohr and Douglas Flohr and Harry Flohr, Administrator of the Estate of Dana Marie Flohr, oppose defendants' motions to dismiss. For the reasons stated below, I shall deny defendant Pennsylvania Power And Light Company's motion to dismiss and grant the motion to dismiss of defendants Otter Creek Recreational Campground and Otter Creek Enterprises, Inc.

### I. Introduction [2]

On or about July 3, 1989, plaintiffs ("the Flohr family") paid a fee to rent and use the facilities at the Otter Creek Recreational Area located in York County, Pennsylvania. The Otter Creek Recreational Area is owned by defendant Pennsylvania Power And Light Company ("PP & L") and managed by defendants Otter Creek Recre-

---

1. The Court notes that default was entered by the Clerk of the Court against defendants Allen Entrekin and Fern Entrekin on December 2, 1991.

2. The introductory facts presented are those *alleged* by plaintiffs in their complaint.

ational Campground and Otter Creek Enterprises, Inc. (referred to collectively as "defendant Otter Creek").[3] On July 3, 1989, the Flohr family was fishing on the banks of the Otter Creek when a nearby tree fell across the Otter Creek and struck three members of the Flohr family. Sharon G. Flohr and Erin E. Flohr were both hit by the falling tree and sustained serious personal injuries. Dana Marie Flohr was hit directly by the falling tree and was killed. Harry G. Flohr was thrown into the Otter Creek by the impact of the falling tree. The tree that fell and caused these tragic events was in decaying and dangerous condition prior to falling across the Otter Creek.

The Flohr family was fishing from a bank of the Otter Creek which was part of Otter Creek Recreational Area. Across the Otter Creek from plaintiffs' fishing spot was other land also owned by PP & L, but not part of Otter Creek Recreational Area. The tree that struck, injured and killed members of the Flohr family was located on the land owned by PP & L, but not part of Otter Creek Recreational Area. The tree fell across the Otter Creek to the bank where the Flohr family was fishing.

Plaintiffs bring this diversity of jurisdiction action pursuant to 28 U.S.C. § 1332. Plaintiffs' complaint alleges forty-five (45) distinct claims against the various defendants. All forty-five (45) counts sound in negligence law. Defendants PP & L and Otter Creek move to dismiss the instant complaint pursuant to Fed.R.Civ.P. 12(b)(6). The essence of defendants' motions is the claim that both defendants are immune from liability under the Recreational Use of Land and Water Act, 68 P.S. § 477–1 *et seq.* ("Recreation Act"). In the alternative, defendants Otter Creek Recreational Campground and Otter Creek Enterprises, Inc. argue that the complaint must be dismissed because no legal duty exists to inspect or correct existing conditions on adjacent land. Plaintiffs oppose defendants' motions to dismiss.

## II. Discussion

### A. *Fed.R.Civ.P. 12(b)(6) Standard For Motions To Dismiss.*

■ In resolving a motion to dismiss, the Court must accept as true all the well-pleaded allegations of the complaint, construe the complaint in the light most favorable to the plaintiffs, and determine whether, under any reasonable interpretation of the pleadings, the plaintiffs may be entitled to relief. *Estate of Bailey by Oare v. County of York,* 768 F.2d 503, 506 (3d Cir.1985); *Helstoski v. Goldstein,* 552 F.2d 564, 565 (3d Cir.1977) (per curiam). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### B. *Immunity Under The Recreation Use And Water Act.*

The Pennsylvania legislature enacted the Recreation Act "to encourage owners of land to make land and water available to the public for recreational purposes by limiting their liability towards persons entering thereon for such purposes." 68 P.S. § 477–1. The Recreation Act defines land as "land, roads, water, water courses, private ways and buildings, structures and machinery or equipment attached to the realty." *Id.* at § 477–2. Further, the Recreation Act defines the term "recreational purpose" to include "but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, water sports and viewing or enjoying historical, archaeological, scenic or scientific sites." *Id.*

---

**3.** In their complaint, plaintiffs identify the two (2) defendants who manage the recreational area as Otter Creek Recreational Campground and Otter Creek Enterprises, Inc. There is no entity named either Otter Creek Recreational Campground or Otter Creek Enterprises, Inc. Rather, the entity that manages the recreational area is named Otter Creek Recreational Area. *See* Defendants Otter Creek Recreational Campground and Otter Creek Enterprises, Inc. Motion To Dismiss at 1, n. 1.

The specific liability protection that the Recreation Act affords owners of land is included in 68 P.S. §§ 477–3, 477–4, and 477–5. These sections of the Recreation Act state:

§ 477–3 *Duty to keep premises safe; warning*

Except as specifically recognized or provided in section 6 of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes.

§ 477–4 *Assurance of safe premises; duty of care; responsibility, liability*

Except as specifically recognized or provided in section 6 of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

(1) Extend any assurance that the premises are safe for any purpose.

(2) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

(3) Assume responsibility for or incur liability for any injury to persons or property caused by an act of omission of such persons.

§ 477–5. *Land leased to State or subdivision*

Unless otherwise agreed in writing, the provisions of sections 3 and 4 of this act shall be deemed applicable to the duties and liability of an owner of land leased to the State or any subdivision thereof for recreational purposes.

*Id.*[4]

Owners under the Recreation Act are protected from liability. Plaintiffs do not contest the status of defendants PP & L and Otter Creek Recreational Area as owners, nor do plaintiffs question the Recreation Act's immunity provisions. Rather, plaintiffs argue that given the circumstances of the instant case, defendants are removed from the protections of the Recreation Act.

The Recreation Act contains two exemptions from the immunity afforded owners of land. The two exemptions from immunity appear at 68 P.S. § 477–6 which states:

[n]othing in this act limits in any way any liability which otherwise exists:

(1) For willful or malicious failure to guard against a dangerous condition, use, structure, or activity.

(2) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for recreational use thereof, except that in the case of land leased to the State or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

*Id.*

Plaintiffs argue that both exemptions apply to defendants PP & L and Otter Creek in the instant matter. First, plaintiffs contend that Section 477–6 only affords immunity to property held out to the public free of charge. Because plaintiffs paid a fee incident to using an Otter Creek campsite, plaintiffs argue that the protections of Section 477–4 are unavailable to defendants PP & L and Otter Creek. Second, plaintiffs argue that Section 477–6 permits the imposition of liability when landowners willfully or maliciously fail to guard or warn against a dangerous condition, use, structure or activity. Essentially, plaintiffs contend that defendants willfully failed to guard or warn against the dangerous tree that struck, injured and killed members of the Flohr family.

1. Section 477–6(2)—Charge Exception.

■ Plaintiffs argue that they were charged a fee of $57.00 to enter Otter Creek Recreational Area and that this fee

---

**4.** It is undisputed that defendants PP & L and Otter Creek fall within the definition of owners under the Recreation Act. *See* 68 P.S. 477–2(2) (stating owner "means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises"). Thus, both defendants PP & L and Otter Creek qualify for the protections afforded owners under the Recreation Act.

constituted a charge under the Recreation Act. Thus, plaintiffs contend that defendants fall within Section 477–6's charge exception to the Recreation Act's immunity provisions. *See* 68 P.S. § 477–6. Defendants respond by arguing that the fee the Flohr family paid was for rental of the campsite and that these fees possess no applicability to the charge exception to the Recreation Act. Defendants PP & L and Otter Creek assert that because (1) there is no charge for members of the general public to enter Otter Creek Recreational Area and (2) plaintiffs gained no right of access to special recreational facilities at Otter Creek by paying the camping fee, it follows that the fee paid by the Flohr family falls outside the meaning of the term "charge" under the Recreation Act.

Plaintiffs correctly note the word "charge" is defined in the Recreation Act as "the admission price or fee asked in return for invitation or permission to enter or go upon the land." *See* Plaintiffs' Brief Opposing Defendant's Motion To Dismiss at 2, *quoting* 68 P.S. § 477–2. Plaintiffs fail, however, to correctly interpret the meaning of the charge exception.

*Livingston By Livingston v. Pennsylvania Power & Light Co.,* 609 F.Supp. 643 (E.D.Pa.1985), *aff'd,* 782 F.2d 1029 (3d Cir. 1986) (holding that easement fees charged by PP & L to landowners for right to gain access to lake ad license fee for placing docks on lake did not constitute charge under Recreation Act which would remove PP & L from Recreation Act's immunity provisions because lake was open to public free of charge) teaches that the charge exception's "language contemplates a 'quid pro quo, i.e., a charge in exchange for permission to enter that land at that time.'" *Id.* at 648, *quoting Hahn v. Commonwealth,* 18 Pa.D. & C.3d 260 (1980). In the instant matter, plaintiffs did not pay a fee in exchange for permission to enter the Otter Creek Recreation Area for the purpose of pursuing recreational activities. Rather, plaintiffs paid a fee in order to use the campsite at Otter Creek for the weekend. If plaintiffs had only come to Otter Creek for the day, it is undisputed that they could have used the recreational facilities and fished at the accident site free of charge. Therefore, the camping fee paid by plaintiffs was not a quid pro quo in exchange for permission to enter Otter Creek at the time plaintiffs were fishing.

Plaintiffs assert that *French v. Woodloch Pines,* 46 Pa.D. & C.3d 136 (1986) supports the conclusion that the camping fee constitutes a charge under the Recreation Act. In the *Woodloch Pines* case, the Court of Common Pleas for Pike County held that a defendant hotel owner could not qualify for Recreation Act protection by virtue of the hotel owner's provision of toboggan sleds and a toboggan run to hotel guests free of charge. Essential to the Court of Common Pleas' conclusion was its reasoning that "it is highly unlikely that the Woodloch Pines proprietors really do open the toboggan run to the public free of charge. The cost of accommodating large crowds throughout the winter would create a large expense on that corporation." *Id.* at 138. Here, it is undisputed that Otter Creek Recreation Area was open to the public free of charge. Therefore, the *Woodloch Pines* holding is wholly inapplicable to the instant matter.

The Court's conclusion is supported by cases from other jurisdictions construing statutes similar to the Recreation Act. In *Garreans v. City of Omaha,* 216 Neb. 487, 345 N.W.2d 309 (1984), the Supreme Court of Nebraska was faced with a similar factual situation under an analogous statutory framework. In *Garreans,* two grandparents entered a park with a camper and paid a fee of $10.50 for use of a campsite over a holiday weekend. On the third day of the weekend, the grandparents' two grandchildren visited the campsite and were severely burned in an explosion. No fee was charged park visitors, but as in the case at hand, campers were required to pay a fee for rental of a campsite. The *Garreans* court was faced with the question of whether immunity existed under a statute which stated: "[n]othing in section 37–1001 to 37–1008 [the immunity sections] limits in any way any liability which otherwise exists ... for injury suffered in any case where the owner of land charges the per-

son or persons who enter or go on the land." *Id.* 345 N.W.2d at 312–13.

In *Garreans,* the term charge was defined as "the amount of money asked in return for an invitation to enter or go upon land." *Id.* In construing the meaning and purpose of Nebraska's charge exception, the Supreme Court of Nebraska reasoned:

[t]he clear meaning of this statute is that in order to constitute a charge, any moneys paid must be paid for the right to enter the facility. Where the language of a statute is plain, direct, and unambiguous, no interpretation is needed, and the Court is without authority to change such language.... Payment of the fee by Mrs. Stoops [the grandmother] did not entitle her to a greater right to use the park's facilities than that had by the general public. We conclude that the fee paid by Evelyn Stoops was not a charge for entry upon the land but was a fee paid for the right to park a camper upon a specific pad.

*Id.* (citations omitted).

As in *Garreans,* I conclude that the fee paid by plaintiffs related to the campsite and therefore falls outside the definition of charge under 68 P.S. § 477–6. Further, as the Court in *Garreans* acknowledged: "[t]his conclusion has been reached by other courts faced with similar issues." *Id., citing Stone Mountain Mem. Ass'n v. Herrington,* 225 Ga. 746, 171 S.E.2d 521 (1969); *Moss v. Dept. of Natural Resources et al.,* 62 Ohio St.2d 138, 404 N.E.2d 742 (1980). Thus, Section 477–6 does not preclude defendants PP & L and Otter Creek from asserting immunity from liability under the Recreation Act.

### 2. Section 477–6(1)—Willful or Malicious Exception

■ The next argument the Court must address is whether defendants PP & L and Otter Creek willfully or maliciously failed to guard or warn against a dangerous condition, use, structure or activity. *See* 68 P.S. § 477–6(1). Plaintiffs contend that defendants knew that diseased trees along

the banks of the Otter Creek presented a danger to those using the creek for recreational purposes and that defendants were therefore guilty of a willful failure to guard or warn against a dangerous condition.[5]

The Recreation Act provides no statutory definition of willfulness. Whether landowner conduct rises to the level of willful failure is an important and discrete question that courts face in applying the immunity provisions of the Recreation Act. The Recreation Act relieves landowners of any duty to discover, make safe or warn of dangerous activities and conditions on premises open to the public for recreational purposes free of charge. *See* 68 P.S. §§ 477–3, 477–4, and 477–5. To avoid obviating the Recreation Act's purpose of encouraging landowners to make land and water available to the public for recreational purposes, it is imperative that the Court read the willfulness exception with the narrowness intended by the legislature. To do otherwise would be to interpret the Act in a manner inconsistent with its purpose.

*Livingston By Livingston,* 609 F.Supp. 643, *aff'd,* 782 F.2d 1029 (3d Cir.1986), again provides helpful guidance in interpreting the Recreation Act. Specifically, *Livingston By Livingston* states:

the Pennsylvania Supreme Court has indicated that willful conduct in this context consists of a failure to disclose "dangerous conditions known to it (the possessor of the premises) and not likely to be discovered." *Kopp v. R.S. Noonan, Inc.,* 385 Pa. 460, 123 A.2d 429 (1956). This formulation of the law is the basis for the court's conclusion in *Hahn v. Commonwealth,* 18 [Pa.] D. & C.3d 260 (1980) that the Recreation Act had the effect of limiting a landowner's specific duty to persons entering his land for recreational purposes to that duty owed to a gratuitous licensee at common law. *Thus, willfulness under § 477–6 contains two elements: (1) actual knowl-*

---

**5.** Plaintiffs make no argument regarding malice. Thus, the Court will only address whether defendants conduct rose to a level of willfulness under the Recreation Act.

*edge of a danger; (2) that is not obvious to those entering the premises.*

*Id.* at 649.

Thus, the Court must determine whether when accepting all of plaintiffs' well-plead allegations in the complaint and construing the complaint in the light most favorable to plaintiffs, plaintiffs have reasonably stated a claim that defendants possessed actual knowledge that a danger existed which was not obvious to those entering Otter Creek Recreational Area and therefore may be entitled to relief under the willfulness standard of Section 477–6.[6]

Defendants contend that the complaint does not allege directly or by inference that defendants willfully failed to warn or guard against a dangerous condition. 68 P.S. § 477–6. Rather, defendants argue that the complaint only expresses factual allegations that suggest negligent conduct in terms of negligence, recklessness and carelessness. In support of this position, defendant Otter Creek relies upon *DiMino By DiMino v. Borough of Pottstown,* 129 Pa.Cmwlth. 154, 564 A.2d 1329 (1989), *rev'd on rehearing on other grounds,* 142 Pa. Cmwlth. 683, 598 A.2d 357 (1991) (reversing on interlocutory appeal the Court of Common Pleas' denial of defendants' motion for summary judgment). In *DiMino By Dimino,* the Commonwealth Court addressed whether a willful failure to warn had occurred under the Recreation Act and stated:

> [a]lthough the February 14, 1979 memorandum indicates knowledge on the part of the Borough of a dangerous condition nothing in the DiMinos' complaint alleges a willful or malicious failure to warn

against the dangerous or unsafe conditions presented by the storm ditch. At most, the DiMinos' complaint alleges "carelessness" or "negligence" on the part of the Borough or School District and this is insufficient to bring the DiMinos within the terms of the limitations set forth in Section 6 of the Recreation Act.

*Id.* 564 A.2d at 1334.

After reviewing the forty-five counts of plaintiffs' complaint in the light most favorable to plaintiffs and drawing all reasonable inferences from the pleadings, the Court concludes that plaintiffs' complaint states a cause of action under the willful failure to warn or guard exception of Section 477–6(1).[7] Simply put, although plaintiffs' complaint sounds principally in negligence, the Court cannot conclude that the complaint fails to allege that defendants possessed actual knowledge of a danger that was not obvious to those entering the recreational area. *Livingston By Livingston v. Pennsylvania Power & Light Co.,* 609 F.Supp. 643, 649 (E.D.Pa.1985), *aff'd,* 782 F.2d 1029 (3d Cir.1986).

### III. Duty To Inspect Or Correct Conditions Existing On Adjacent Land

■ The Recreation Act provides landowner's with immunity from certain liability. *See* 68 P.S. §§ 477–3, 477–4, and 477–5. Regardless of whether an owner qualifies for immunity under the Recreation Act, it is settled that a negligence claim cannot be based on a set of facts under which the law imposes no duty on the defendant in favor of the plaintiff. *See Macina v. McAdams,*

---

**6.** Plaintiffs urge the Court to adopt the definition of willfulness articulated by the Middle District of Pennsylvania in *Rosa v. United States,* 613 F.Supp. 469, 476–77 (D.C.Pa.1985) (defining willful to include three elements: (1) foreseeability of danger; (2) defendants' knowledge of the danger; and (3) the actions taken by defendant in light of the first two factors). Although the tests for willfulness in *Rosa* and *Livingston By Livingston* are quite similar, the Court concludes that the test articulated in *Livingston By Livingston* is preferable because (1) it is more precise and (2) the definition originates in the Pennsylvania courts. Further, under either test, the Court would reach the same result in the instant matter.

**7.** The Court concludes that the decision in *DiMino By DiMino* is distinguishable. The Commonwealth Court in *DiMino* reviewed a denial of a motion for summary judgment. Presumably in *DiMino,* discovery had failed to reveal facts supporting willfulness. Here, the Court does not possess the benefit of any discovery. Of course, defendant is free to move for summary judgment if fact discovery fails to produce evidence that meets the standard for willfulness as stated in *Livingston By Livingston.*

280 Pa.Super. 115, 421 A.2d 432, 434 (1980) (Spaeth, J.), *quoting* Prosser, *Law of Torts,* § 30 at 143 (4th ed. 1971). It is established under Pennsylvania law that a possessor of land has no duty to take action or prevent harm caused by conditions on adjacent land. *Houck v. Samuel Geltman & Co.,* 400 Pa.Super. 534, 583 A.2d 1244 (1991).

In the instant matter, it is apparent that defendant Otter Creek owed no duty to plaintiffs with respect to the tree that struck, injured and killed members of the Flohr family. There is no question that the tree was located on land owned by PP & L, but not part of the Otter Creek Recreation Area. Under *Houck v. Samuel Geltman & Co.,* defendants Otter Creek Recreational Campground and Otter Creek Enterprises, Inc. owed no duty to plaintiffs. Thus, under *Macina v. McAdams,* the negligence action against the Otter Creek defendants must be dismissed for failure to state a claim upon which relief can be granted.

## IV. Conclusion

For the reasons stated above, I shall deny PP & L's motion to dismiss and grant the motion to dismiss filed by defendants Otter Creek Recreational Campground and Otter Creek Enterprises, Inc.